UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                                   Case No.: 2:94-cr-108-SPC-NPM

JERMAINE A. YOUNG
_____/

**ORDER**

Before the Court is Defendant Jermaine A. Young's Motion for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] (Doc. 401). The Government filed a response in opposition. (Doc. 403). With the Court's permission (Doc. 405), Defendant filed a reply (Doc. 406). For the following reasons, the motion is denied.

**Background**

This case involves one of the most vicious, violent crimes against an innocent female victim that the undersigned has seen in nearly four decades of practice as an Assistant State Attorney, state court judge, federal magistrate judge, and now district judge. In his motion, Defendant glosses over the details, describing his crimes as "horrible, violent, and senseless." (Doc. 401 at 3). But that doesn't scratch the surface. The heinous facts warrant retelling.[2]

---

[1] Defendant requests a hearing on the motion to discuss the Court's and the Government's concerns. (Doc. 401 at 24 n.7). Having thoroughly reviewed the briefs and the record, the Court does not need a hearing to decide the motion. The Court denies Defendant's request.
[2] For efficiency and because Defendant does not include any specific facts, the Court takes the facts from the Government's response. (Doc. 403 at 1–3).

On November 16, 1994, Defendant (then 20 years old), Willie James Colbert, and four women brutally carjacked and kidnapped the victim outside a shopping mall in Port Charlotte, Florida.  Pointing firearms at her, Defendant and Colbert forced the victim into the rear of her van and then entered the van with the four women.  Defendant and Colbert took turns driving the van to Georgia, stopping along the way for gasoline and food.  En route, Defendant beat, kicked, and stomped on the victim as she lay on the floor of the van, and burned her with the van's cigarette lighter when she refused to give him the PIN number for her ATM card.  As they neared Georgia, Defendant and Colbert stopped at a convenience store and directed the women to purchase some duct tape, tie up the victim, and cover her eyes and mouth.  After arriving in Albany, Georgia, Defendant and Colbert left their cohorts at a motel and drove the van, with the victim still in the back, to the Flint River.  Intending to drown the victim, Defendant and Colbert attempted to push the van into the river, but it became stuck in the mud.

Failing in their attempt to drown the victim, Defendant and Colbert then dragged her by her feet out of the van and into the woods.  In the woods, Defendant again beat and stomped on the victim, attempted to strangle her twice with two different belts (both belts broke from the force), and then attempted to choke her with a headlock.  Defendant also stabbed the victim with a screwdriver.  Colbert joined by bashing the victim's face and head with

a brick. Defendant and Colbert then left the victim for dead, Defendant picking up bits of evidence and scattering them elsewhere. Somehow, the victim survived.

In 1996, now-Senior United States District Judge Elizabeth A. Kovachevich sentenced Defendant to serve life plus five years' imprisonment after a jury found him guilty of conspiracy to commit carjacking, carjacking, conspiracy to commit kidnapping, kidnapping, and use of a firearm in connection with a violent crime. (Doc. 167). At sentencing, the Court found Defendant had a total offense level of 41 and a criminal history of IV, resulting in a mandatory guideline range of 360 months to life.

Today, Defendant is incarcerated at FCI Jesup in Jesup, Georgia, is 50 years old, and is serving a life sentence. *See* BOP Inmate Locator at https://www.bop.gov/inmateloc/ (last accessed on April 10, 2025). He has spent over 30 years in prison and, including good time credit, has served approximately 34 and a half years. (Doc. 401 at 3).

In the motion, Defendant describes his "transformation" while in prison—from "a troubled young man to a mature thoughtful adult who is a role model and mentor to others." (*Id.*). His record shows decades of employment, working as an Assistant in the Religious Services Department. Previously, he worked as a chapel clerk, commissary orderly, and in the recreation department. He has become a man of faith, working closely with the Religious

Department staff of several prisons, completing faith-based programs, and leading other programs, commencements, and ceremonies.

Further, Defendant is a suicide companion for individuals contemplating suicide and helps draft pro se legal filings for other prisoners. Among other things, Defendant has earned his GED, taken classes, and earned a diploma in custodial maintenance. While in prison, Defendant has incurred two disciplinary infractions. Most recently, he was disciplined for fighting in November 2022. (Doc. 401-3 at 4). He denied the charges. His other infraction occurred in 2010 and involved possessing a cell phone or hazardous tool. He admitted that charge. Defendant states that he feels remorse for the pain and suffering he caused the victim and that it is the "main regret" in his life. (Doc. 401-1 at 4).

## Legal Standard

A district court has no inherent authority to modify a defendant's sentence and may do so "only when authorized by a statute or rule." *United States v. Puentes*, 803 F.3d 597, 606 (11th Cir. 2015). One such statute is 18 U.S.C. § 3582(c)(1)(A), which concerns compassionate release. A court may grant compassionate release if (1) "an extraordinary and compelling reason exists," (2) "a sentencing reduction would be consistent with U.S.S.G. § 1B1.13," *and* (3) the "[18 U.S.C.] § 3553(a) factors weigh in favor of

compassionate release." *United States v. Giron*, 15 F.4th 1343, 1347 (11th Cir. 2021).

The Sentencing Commission's applicable policy statement, in U.S.S.G. § 1B1.13, defines "extraordinary and compelling reasons" for purposes of § 3582(c)(1)(A), and it is binding on the courts. *United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021). Under § 1B1.13, extraordinary and compelling reasons that may render a defendant eligible for a sentence reduction are: (1) medical circumstances of the defendant; (2) advanced age plus length of term already served; (3) family circumstances that result in the defendant being the only available caregiver for a minor or incapacitated immediate family member; (4) sexual or physical abuse of the defendant by an individual with custody or control of the defendant during the term of imprisonment sought to be reduced; (5) other circumstances similar in gravity to those in (1) through (4); and (6) an "unusually long sentence," if the defendant has served at least 10 years' imprisonment and a change in the law would produce a gross disparity between the defendant's sentence and the sentence likely to be imposed at the time the motion is filed. USSG §1B1.13(b)(1)–(6).

If a court finds that an extraordinary and compelling reason exists, it still may not reduce the defendant's term of imprisonment under § 3582(c)(1)(A) unless it also finds that the defendant's release would not

endanger the community and that the factors listed in 18 U.S.C. § 3553(a) favor compassionate release. *United States v. Tinker*, 14 F.4th 1234, 1237 (11th Cir. 2021). The § 3553(a) factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). If the defendant fails to establish any of the three requirements, a court need not analyze the other requirements and cannot grant relief. *See Giron*, 15 F.4th at 1348.

A defendant seeking compassionate release "bears the burden of proving entitlement to [such] relief." *See United States v. Kannell*, 834 F. App'x 566,

567 (11th Cir. 2021). And a defendant moving a court for compassionate release may do so only after "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons ["BOP"] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *See United States v. Harris*, 989 F.3d 908, 909–10 (11th Cir. 2021).

## Analysis

The parties agree that Defendant exhausted his administrative remedies, so the Court considers the merits of the motion. (Doc. 401 at 7; Doc. 403 at 5). First, he argues that he demonstrates extraordinary and compelling reasons based on his unusually long sentence and other reasons. Specifically, Defendant seeks a sentence reduction based on the length of his current sentence, the "gross disparity" between his current sentence and the sentence he would likely receive today for the same offenses, and the individual characteristics of his case including his youth at the time of his offenses. (Doc. 401 at 1 (citing U.S.S.G. § 1B1.13(b)(6); (b)(5))). He points to the fact that he is serving a life sentence, which is by definition "unusually long," and that he has served over 10 years in prison. (*Id.* at 10). If the Court sentenced him today, he states that he would have an advisory guideline range of 235–293 months as a result of retroactive Amendments 599 and 821. Further, when Defendant committed the crimes, he was 20 years old. Defendant explains that

his brain was not fully developed at that age. He had a history of childhood violence and trauma. And he drank alcohol and used marijuana. From Defendant's perspective, all of these elements negatively affected his behavior and impulse control. (*Id.* at 12–19).

Next, Defendant argues that he does not pose a danger to the community if released. (*Id.* at 20). He acknowledges that his offenses were "serious and violent," but they occurred over 30 years ago, when he was young, an alcoholic, and without family or financial support. He emphasizes that he only has two prison disciplinary infractions, has a release plan, and has a plan to obtain employment in custodial maintenance and lawn care services. According to Defendant, a term of supervised release would "ameliorate" any "lingering concerns." (*Id.*)

Finally, Defendant argues that reducing his sentence is consistent with the sentencing factors of § 3553(a). He emphasizes that he has served 70 months more than the advisory guideline range would require today. (*Id.* at 21). Plus, he argues that 30 years is significant—a substantial punishment in its own right. He also highlights his young age when he committed the crime and his post-sentencing conduct.

First, the Court addresses extraordinary and compelling reasons. The parties dispute whether Defendant has demonstrated extraordinary and compelling reasons that warrant a sentence reduction. (Doc. 401 at 8–19; Doc.

8

403 at 5–18; Doc. 406 at 1–8). The Court thoroughly reviewed the briefs and the record, and is well-versed in the case law, the discussion regarding "unusually long" sentences, and the studies concerning youth offenders. But the Court need not decide whether Defendant has established extraordinary and compelling reasons for release because it finds he poses a danger to the community and the § 3553(a) factors do not support compassionate release.

The Court cannot overstate the monstrous nature of Defendant's crimes against the victim. As the Government correctly observes, Defendant was on a crime spree to finance his stay in Fort Myers when he committed the instant offense. (Doc. 403 at 19). He and his co-conspirators robbed multiple people, including an older woman at a shopping center. During one of these robberies, an individual was hit in the face with a handgun. Further, he and his co-conspirators robbed a drug dealer with a handgun and stole his drugs. Also noteworthy, Defendant was a drug dealer, committed daily gasoline thefts, and had a criminal history since age 13.

Once Defendant and his co-conspirators carjacked and kidnapped the victim, his crimes against her were not only physical (as graphically described above). They also psychologically tortured her, threatening to kill her husband and children when trying to obtain her bank information. The victim heard one of the perpetrators say, "we're [sic] got to kill her." (Doc. 403 at 20). The Government aptly described the victim's survival as "miraculous." (*Id.*).

9

On this record, the Court cannot find that Defendant poses no danger to the community. He is capable of appalling violence against others. Defendant's extensive rehabilitative efforts do not change the Court's conclusion that he would pose a danger to the community if released. *United States v. Lewis*, No. 8:10-CR-438-VMC-AAS, 2024 WL 3742736, at *2 (M.D. Fla. Aug. 9, 2024) (defendant remained danger to community despite rehabilitative efforts). Additionally, the Court understands that Defendant has incurred two disciplinary infractions while in prison. Notably, however, the most recent of those two infractions involved physical violence, namely fighting with another person. This fact undermines Defendant's argument that he is no longer a danger to the community following years of rehabilitation. The Court can only be certain that the community is protected if Defendant remains in prison. *See id.* at *2 (denying compassionate release for defendant who committed a string of violent armed robberies and carjacking that placed multiple victims in fear for their lives and at risk of serious injury); *United States v. Leon*, No. 6:14-CR-238-JA-DCI, 2024 WL 282365, at *1 (M.D. Fla. Jan. 25, 2024) (denying compassionate release for defendant who committed a carjacking offense).

Finally, the § 3553(a) factors weigh heavily against granting compassionate release. The Court already recounted in detail Defendant's history and characteristics. He brutally tortured and tried to kill an innocent

woman, who was merely in the wrong place at the wrong time. Defendant and his co-conspirators did virtually everything in their power to traumatize and kill her. There is no reason the victim is alive other than their incompetence and sheer luck. During sentencing, the victim said, "The only thing I wanted to say was the thing I'd like to see happen to these two heartless people would be to get exactly what they have done to me, a life sentence . . . I will never be able to be free from this mess, so why should [Defendant and Colbert]? They gave me a life sentence, so in return, let me know this is not the way to treat people, let them always remember like I will." (Doc. 403 at 21–22 (citing Doc. 197)). The Government advises that the victim has been notified of the motion and opposes his release. (*Id.* at 22). She thinks Defendant "should stay right where he is, that way he will not do this to anyone else." (*Id.*). The Court agrees.

The undersigned has also considered the kinds of sentences available and the sentencing range established for the crimes at issue. In the Court's view, Defendant's "gross disparity" arguments are without merit. Faced with these facts and the current advisory guideline range, the Court would have varied upwards, and imposed the same sentence as Judge Kovachevich.

The Court concludes that a reduction of Defendant's sentence would undermine the original judgment that took into consideration the § 3553 factors, and specifically the promotion of respect for the law and adequate

deterrence. Granting compassionate release in this case would not adequately punish Defendant for his conduct, reflect the seriousness of his crime, or deter those considering engaging in similar crimes. Thus, the Court denies his motion.

Accordingly, it is

**ORDERED**:

Defendant Jermaine A. Young's Motion for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 401) is **DENIED**.

**DONE and ORDERED** in Fort Myers, Florida on May 9, 2025.

*[signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All parties of record